[No. 24718-2-I. Division One. May 13, 1991.]

EARL E. DOUGLAS, ET AL, *Appellants*, v. BILLY
JOE CROPLEY, ET AL, *Respondents*.

*Donald K. Davis, Thomas Dalglish,* and *The Davis Firm,* for appellants.

*William P. Fite* and *Betts, Patterson & Mines, P.S.,* for respondents.

PEKELIS, J.—This is an action for personal injuries and damages allegedly suffered by plaintiffs Earl E. Douglas and William Swiger when their van collided with a disabled tractor–trailer truck driven by Billy Joe Cropley and owned by his employer, Art DiPietro and DiPietro Trucking, Inc. Douglas and Swiger appeal from a judgment following an adverse jury verdict. They contend that the trial court improperly instructed the jury on Cropley's duty to warn other drivers of his disabled vehicle. We affirm.

I

On the morning of January 10, 1986, at approximately 7 a.m., Cropley was driving eastbound on Interstate 90 (I–90) from Kent to Spokane when he entered a dense fogbank just outside of Moses Lake. The surface of the road inside the bank was coated with black ice. As he proceeded through the fog, Cropley noticed what appeared to be a flashing yellow light in front of him. He attempted to slow down by easing his foot off the accelerator. As he did, however, the tractor–trailer jackknifed, slid off the highway, and came to rest with the trailer perpendicular to the roadway in the median strip and the tractor blocking the inside part of the westbound lane of I–90.

Cropley stepped down from the cab and attempted to locate his roadside emergency equipment. Because the

driver's side of the tractor was crushed, he crawled through a cubbyhole on the passenger side and retrieved a tool box containing one flashlight, three reflective triangles, and road flares.

Cropley set the triangles approximately 50, 100, and 150 feet to the east of the disabled truck on the inside westbound lane of I–90. He laid one flare next to each triangle and placed a fourth flare an additional 50 feet down the highway, or 200 feet east of his truck. Each flare had a 20–minute fuse but could burn shorter or longer by as much as 2 to 5 minutes either way. Cropley had four additional flares which he did not set out. After he had finished, Cropley returned to his truck and attempted to call for assistance on his citizens band radio.

At approximately 7:45 a.m., Douglas and Swiger were traveling westbound on I–90 in Swiger's van. They had just entered the fog when they came upon Cropley's disabled truck blocking their lane. Douglas, who was driving, swerved into the median and collided with the trailer portion of the truck. He sustained injuries to his right hip, knee and ankle. Swiger injured his neck and cervical spine. Neither remembered seeing any flares or other warning devices prior to the collision.

On July 28, 1986, Douglas and Swiger filed a complaint for personal injuries and damages arising from the accident. Their principal theory of liability at trial was that Cropley had failed to adequately warn oncoming motorists of his disabled vehicle. The jury returned a verdict in favor of the defendants.

## II

Douglas and Swiger assign error to the trial court's giving of instruction 13, which set out Cropley's duty to warn approaching drivers of his disabled vehicle. The instruction stated:

A statute requires that:

Whenever a truck is disabled upon the traveled portion of a divided highway, the driver of such vehicle shall place a lighted

fusee, a lighted red electric lantern, or a portable red emergency reflector at a distance of approximately 200 feet from the vehicle in the center lane occupied by the stopped vehicle, and in the direction of traffic approaching in that lane; one at a distance of approximately 100 feet from the vehicle, in the center of the lane occupied by the vehicle and in the direction of traffic approaching in that lane, and one at the traffic side of the vehicle and approximately 10 feet from the vehicle in the direction of the nearest approaching traffic.

This instruction is modeled on RCW 46.37.450(3) which provides:

Whenever any vehicle of a type referred to in this section is disabled upon any roadway of a divided highway during the time that lights are required, the appropriate warning devices prescribed in subsections (1) and (5) of this section shall be placed as follows:

One at a distance of approximately two hundred feet from the vehicle in the center of the lane occupied by the stopped vehicle and in the direction of traffic approaching in that lane; one at a distance of approximately one hundred feet from the vehicle, in the center of the lane occupied by the vehicle and in the direction of traffic approaching in that lane; and one at the traffic side of the vehicle and approximately ten feet from the vehicle in the direction of the nearest approaching traffic.

Douglas and Swiger claim that the trial court erred in refusing to include within instruction 13 the following proposed paragraph taken from RCW 46.37.450(2):

Whenever any vehicle referred to in this section is disabled within five hundred feet of a *curve, hillcrest, or other obstruction to view,* the warning signal in that direction shall be so placed as to afford ample warning to other users of the highway, but in no case less than five hundred feet from the disabled vehicle.

(Italics ours.) They assert that atmospheric conditions, such as dense fog, fall within the "or other obstruction to view" language of the statute. Thus, under their theory, Cropley was required to provide oncoming drivers with "ample warning", which meant placing warning devices at least 500 feet from his disabled truck.

■ We find Douglas and Swiger's contention unpersuasive. RCW 46.37.450 sets out the manner in which the driver of a disabled "truck" must display certain required warning devices. The central purpose of the statute is "to

give protection to the traveling public from the hazards of stalled vehicles on the highway." *Schneider v. Forcier,* 67 Wn.2d 161, 165, 406 P.2d 935 (1965). *See also Kegler v. Hogland Transfer Co.,* 197 Wash. 566, 567, 85 P.2d 1051 (1938).

Douglas and Swiger correctly point out that dense fog can obscure a disabled vehicle from the view of approaching motorists. However, that does not mean that fog constitutes an "other obstruction to view" as that phrase is used within the context of RCW 46.37.450(2).

 By its own terms, RCW 46.37.450(2) only applies where a vehicle is disabled within *500 feet* of an obstruction. Under this statute, therefore, a driver must be able to measure the distance between the driver's disabled vehicle and some stationary reference point, such as a curve or hillcrest. RCW 46.37.450(2). Since a driver could not possibly make the required measurement from fog, it is inconceivable that the statute was intended to include such an "obstruction". As our Supreme Court observed in *Blaak v. Davidson,* 84 Wn.2d 882, 886, 529 P.2d 1048 (1975), "it is the very nature of dust clouds—as well as of fog—that their density and the corresponding lack of visibility may vary considerably within a few yards".

Furthermore, under the rule of ejusdem generis, "general terms appearing in a statute in connection with specific terms [are to] be given meaning and effect only to the extent that the general terms suggest items similar to those designated by the specific terms." *State v. Sigman,* 60 Wn. App. 1, 4, 802 P.2d 142 (1990) (citing *Kringel v. Department of Social & Health Servs.,* 45 Wn. App. 462, 465, 726 P.2d 58 (1986)).

The general statutory phrase at issue here, "obstruction to view," is plainly associated with the specific words "curves" and "hillcrest". Thus, as a matter of statutory construction, RCW 46.37.450(2) can only be read as contemplating stationary obstructions.

Accordingly, we hold that fog does not constitute an "other obstruction" within the plain meaning of RCW

46.37.450(2). Therefore, the trial court properly instructed the jury.

Douglas and Swiger make several additional assignments of error. However, the fact that they were not entitled to an instruction under RCW 46.37.450(2) is dispositive of the other issues raised in this appeal. Whether the trial court erred in its instructions on the issues of contributory negligence and proximate causation, as well as the admissibility of evidence of other accidents, becomes irrelevant in light of the failure of appellants' theory of liability.[1]

Affirmed.

WEBSTER, A.C.J., and FORREST, J., concur.

Reconsideration denied July 15, 1991.

---

[1]We recognize that Douglas and Swiger also originally claimed that Cropley's negligent driving caused the truck to jackknife. However, it is clear from the record and the arguments raised on appeal that this theory has been abandoned. There was no mention to the jury in closing argument that Cropley drove negligently. Moreover, Douglas and Swiger were emphatic both in their brief and at oral argument that this is a "warnings case".