[No. 43333.   En Banc.   January 2, 1975.]

ARIE BLAAK et al., *Respondents*, v. LAVERNE DAVIDSON et al.,
*Petitioners*.

[See Ann. 42 A.L.R.2d 13; 8 Am. Jur. 2d, Automobiles and Highway Traffic § 733.]

*Olson & Olson*, by *James B. Remsen*, for petitioners.

*Campbell & Johnston*, by *D. Wayne Campbell*, for respondents.

FINLEY, J.—This is a tort action for damages arising out of a rear-end collision between a passenger car and a following tanker truck carrying gasoline. After the jury returned a verdict for the defendant, the trial court granted a judgment n.o.v. on the issue of liability. The Court of Appeals affirmed. We granted a petition for review.

The facts are as follows: On September 16, 1971, defendant (petitioner) Davidson was driving an 18,000-pound gasoline truck on the Pasco-Kahlotus highway. Visibility was generally ½ to ¾ of a mile. Farmlands adjoining the highway had recently been plowed, rendering the soil powdery

and dusty. The wind was blowing moderately with occasional strong and persistent gusts of wind picking up loose soil, creating dust clouds and reducing visibility.

As the defendant was proceeding towards Kahlotus, he was engulfed by one such dust cloud. This dust cloud continued for approximately 100 to 150 yards, after which the dust subsided and visibility increased to approximately ¼ mile. Defendant safely passed through this first dust cloud and observed, to the extent of his visibility, that there were no cars on the highway ahead of him.

Shortly thereafter, a second dust cloud engulfed the truck and the highway. According to the bulk of the testimony, visibility was completely obscured by this second dust cloud. The defendant's immediate reaction was to reduce the speed of the truck to 5 to 10 miles per hour. A slower speed was not feasible because of the likelihood that it would cause the truck either to stall or to begin jerking. The defendant did not completely stop the truck for three interrelated reasons: (1) large wheat trucks and petroleum tankers regularly traveled this road, and the defendant feared that one might strike his gasoline truck from the rear, thereby causing it to explode; (2) the shoulder of the highway was too narrow to allow the defendant to pull completely out of the line of travel of other vehicles traveling in the same direction; and (3) the defendant knew of a safe and sufficiently wide pull-out a short distance ahead, at which he intended to stop and wait for the dust storm to subside.

As the defendant was proceeding through this second dust cloud, his truck struck the rear of plaintiff's (respondent's) automobile, which had slowed to 2 to 3 miles per hour—nearly a stop—on this normally high-speed highway. At the time of the collision, defendant's headlights were on. No citations were issued.

The sole issue is: When the visibility of a driver of a vehicle is completely obscured by atmospheric conditions, e.g., a dust storm, is the driver (a) negligent as a matter of

law for failure to stop the vehicle, or (b) should the question of negligence ordinarily be submitted to the jury for consideration in view of the facts and surrounding circumstances?

In Washington, two divergent rules have evolved, with the application of each seemingly dependent solely on the type of condition obscuring the driver's vision. Where dust has been responsible for completely obscuring vision, it has generally been held that the driver of the vehicle is under an absolute duty to stop. Failure to do so results in a holding of negligence as a matter of law. *Trainor v. Interstate Constr. Co.*, 187 Wash. 142, 60 P.2d 7 (1936); *Pryor v. Safeway Stores, Inc.*, 196 Wash. 382, 83 P.2d 241 (1938). *But see Wines v. Engineers Ltd. Pipeline Co.*, 51 Wn.2d 487, 319 P.2d 563 (1957). In contrast, when fog has been the condition obscuring vision, the decisions indicate that the issue of the driver's negligence is a question for the jury. *Devoto v. United Auto Transp. Co.*, 128 Wash. 604, 223 P. 1050 (1924); *Morehouse v. Everett*, 141 Wash. 399, 252 P. 157, 58 A.L.R. 1482 (1926); *Cunningham v. Dills*, 19 Wn.2d 845, 145 P.2d 273 (1944). *But see Eldredge v. Garrison*, 184 Wash. 687, 52 P.2d 1240 (1935). When a driver has been blinded by lights of an oncoming vehicle, the earlier decisions of the court indicated that an absolute duty to stop arises, *Jaquith v. Worden*, 73 Wash. 349, 132 P. 33 (1913), but the more recent cases indicate that the matter is a question for the jury. *O'Neil v. Gruhn*, 197 Wash. 557, 85 P.2d 1064 (1938); *Smith v. Barnes*, 36 Wn.2d 795, 220 P.2d 670 (1950). Finally, it has been held that a driver whose vision is totally obstructed by the sun is under an absolute duty to stop. *James v. Edwards*, 68 Wn.2d 194, 412 P.2d 123 (1966).

It is difficult and unrealistic to perceive and pose any viable distinctions between fog, dust, car lights or the sun which would justify disparate rules of law regarding each condition. Nor do we think that the above decisions can be distinguished and harmonized on the basis of other unique facts involved in each case.

 It is tempting to say rather simply that one is negligent as a matter of law *if he drives when he cannot see.* But simple solutions are dangerously illusive and productive of unexpected, unhappy, and unsound results in the law. Therefore, great care and caution should undoubtedly be the touchstones in formulating absolute rules of conduct in the negligence field of the law. *See generally* W. Prosser, *Handbook of the Law of Torts* 188-90 (4th ed. 1971); 2 F. Harper & F. James, *The Law of Torts* § 17.1 (1956).

In any event, we are convinced that the resolution of the case at bar requires us to make a frank and forthright policy decision, choosing between and adopting one of the above-mentioned conflicting lines of authority in Washington as to the law applicable henceforth.

A consideration of whether an absolute rule should be formulated must focus upon the subject matter involved and the potential variables as to facts and circumstances. In these respects, the automobile and its use in our mobile society is particularly unique. Seldom, if ever, are the facts and circumstances surrounding a collision the same. Thus, particularly with respect to automobiles, the propriety of solidifying the law into mechanistic rules for universal application is dubious, and this legal reasoning or philosophy is clearly on the wane.

In this regard, human experience has proved unworkable and unjust the attempt by Justice Holmes, in *Baltimore & O.R.R. v. Goodman*, 275 U.S. 66, 72 L. Ed. 167, 48 S. Ct. 24, 56 A.L.R. 645 (1927), to establish an absolute rule that a driver approaching a railroad must stop, look, listen and, if necessary, get out of the car before crossing the tracks. Consequently the Holmes rule in its absolute form was subsequently rejected by Justice Cardozo in *Pokora v. Wabash Ry.*, 292 U.S. 98, 78 L. Ed. 1149, 54 S. Ct. 580, 91 A.L.R. 1049 (1934), and most other jurisdictions have followed suit. Similarly, the range-of-vision rule, *i.e.,* that a driver of a vehicle is negligent as a matter of law unless he can stop within the range of his vision, has undergone a process of

atrophy when it became apparent that an unwavering application of the rule would be unjust. *See generally* W. Prosser, *Handbook of the Law of Torts* 188-90 (4th ed. 1971).

Turning now to the instant case, there is authority from other state jurisdictions for the proposition that a driver of a vehicle must stop when his vision is completely obscured. *Williams v. Neff,* 64 N.M. 182, 326 P.2d 1073 (1958); *Price v. State Highway Comm'n,* 62 Wyo. 385, 167 P.2d 309 (1946). *See also* 2 C. Berry, *The Law of Automobiles* § 2.325 (7th ed. 1935). However, the better reasoned cases seem to recognize that such an absolute rule is imbued with the same excessive rigidity that characterized the "stop, look, and listen" rule. Thus, a growing number of cases in other states prefer to allow the jury to consider all the surrounding circumstances. *See, e.g., Carnation Co. v. Garrett Freightlines,* 95 Idaho 803, 520 P.2d 258 (1974); *Bixby v. Pickwick Stage Co.,* 131 Cal. App. 739, 21 P.2d 972 (1933); *Seibert v. A. Goldstein Co.,* 99 N.J.L. 200, 122 A. 821 (1923).

The excessive rigidity of an absolute duty to stop is underscored by the facts of the instant case. Since it is the very nature of dust clouds—as well as of fog—that their density and the corresponding lack of visibility may vary considerably within a few yards, the defendant herein could not assume that all vehicles behind him would necessarily be stopped. Moreover, the defendant's truck was loaded with gasoline; there was no place to immediately pull off the highway; and the defendant feared being rear-ended on this heavily traveled road. That the defendant's fears were not solely the figment of an overactive imagination is well illustrated by the fact that a car which had stopped close to the place of the accident herein was struck by a tanker traveling in the opposite direction. In any event, it is at least debatable whether stopping on the highway for an indeterminate period of time would be safer, with respect to other users of the highway, than slowly proceeding to a known, safe, pull-out a short distance ahead.

On the basis of the foregoing analysis, we reject the rule holding a driver of a vehicle negligent as a matter of law for failure to stop when his vision is completely obscured, because such a rule would be too rigid to cope with the numerous situations presenting new or additional factors and variables. Rather, we approve and adopt the approach of the fog cases in *Morehouse, Devoto,* and *Cunningham.* When vision is partially or completely obscured, the jury should determine whether the defendant's failure to stop constitutes negligence under the general test of whether defendant acted as a reasonable man in view of all the facts and circumstances. See for example, the instructions of the trial court in *Wines.* Only in the most unusual and exceptional circumstances indicating clear fault and liability should the court hold defendant negligent as a matter of law. *Trainor, Pryor, Eldredge,* and *Jaquith* are overruled to the extent they are inconsistent with the views expressed herein.

Since a jury passed on the question of negligence in this case and found in favor of the defendant, its verdict should be reinstated. It is so ordered.

HALE, C.J., and ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.